UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JAMES MICHAEL MURPHY, M.D.,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 3:16-cv-00665-YY

FINDINGS AND RECOMMENDATION

YOU, Magistrate Judge:

Before the court is Defendant United States' motion to dismiss (ECF #15), which this court converted to a motion for summary judgment under FRCP 12(d). Order, ECF #39. Plaintiff James Michael Murphy, M.D. ("Murphy") asserts claims for defamation and malicious prosecution based on statements made by Staff Sargent Jolene Mosebach ("Mosebach") following an allegedly unauthorized and unchaperoned gynecological examination Murphy performed on Mosebach in November 2011. Because Murphy concedes that he has failed to state a claim for malicious prosecution under FRCP 12(b)(6) and because Murphy's defamation claims are precluded by res judicata, the United States' motion (ECF #15) should be GRANTED.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On or about February 5, 2015, Murphy, as a *pro se* litigant, filed a complaint in Multnomah County Circuit Court, *Murphy v. Mosebach* (*"Murphy I"*), Case No. 15CV02439,

1 – FINDINGS AND RECOMMENDATION

which was removed to federal court, Case No. 3:15-cv-00402-MO, ECF #1, Ex. 1, at 2. Murphy brought claims for slander and defamation against Mosebach for submitting a complaint and written statement to her superiors in the Oregon Air National Guard ("ORANG") alleging Murphy performed an unchaperoned and medically unnecessary Pap smear and gynecological examination. *Id.* Murphy alleged that "although [Mosebach] initially made the false statements in an executive forum, she also made the defamatory statements outside of this forum after her protected statement." *Id.* at 3. Murphy claimed Mosebach "told many individuals of the alleged incident. These individuals were not within her chain of command or counsel and she did not have a duty to notify them of her allegations." *Id.* Murphy also claimed that Mosebach "told a lot of people about the incident because 'it helps her deal with it.' [She] continued to tell uninvolved individuals about her allegation even after she was warned against such conduct by her superiors." *Id.* Further, Murphy claimed Mosebach made defamatory statements to people on base, to the general public, and to the media. *Id.* at 4. He noted Mosebach received a Letter of Reprimand for speaking out about her allegations outside of official channels on April 6, 2014. *Id.* at 3.

The United States substituted itself as the sole defendant (*Id.*, ECF #2), and filed a motion to dismiss for lack of jurisdiction (*Id.*, ECF #7). Twenty six days later, the court ordered Murphy to show cause for failing to respond to the motion to dismiss. *Id.*, ECF #10. Murphy filed a response arguing, inter alia, that removal to federal court was improper and against application of the Westfall Act, and that Mosebach's allegedly false statements were not made within the scope of her employment within ORANG. *Id.*, ECF #11. Because Murphy "failed to come forward with any justification for his lack of prosecution," however, the court dismissed the action on May 19, 2015. *Id.*, ECF #12. Murphy appealed the dismissal to the Ninth Circuit.

2 – FINDINGS AND RECOMMENDATION

*Id.*, ECF #14, at 1. The Ninth Circuit dismissed his appeal for failure to pay the applicable docketing and filing fees. *Id.*, ECF #14, at 1–2.

On February 10, 2016, Murphy, again *pro se*, filed a second case in Multnomah County Circuit Court, *Murphy v. Mosebach ("Murphy II")*, Case No. 16CV03923. The United States again appeared on behalf of Mosebach and removed the action to federal court, which resulted in this case. ECF #1, Ex. 2, at 1–3. Here, Murphy asserts claims for defamation and malicious prosecution. *Id.*, at 1–7. The United States filed a motion to dismiss (ECF #15), claiming Murphy failed to state a claim under FRCP 12(b)(6) regarding his malicious prosecution claim, this court lacks subject matter jurisdiction under FRCP 12(b)(1) over Murphy's defamation claims, his defamation claims are barred by res judicata, and also that his defamation claims are barred by the Federal Tort Claims Act. Motion to Dismiss, ECF #15.

Four months later, Murphy wisely secured counsel, who conceded "that issue preclusion applies against the defamation claim, and that the malicious prosecution claim does not state a claim because he was not charged with a crime." Murphy's Suppl. Response, ECF #36, at 1. However, Murphy asserts he should be allowed to proceed with a subset of his defamation claims because this subset pertains to newly discovered defamatory statements. *Id.*

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The court considers the underlying substantive law regarding the claims to determine which facts are material. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). Only disputes over material facts, those that might affect the outcome of the suit, preclude the entry of

summary judgment. *Id.* An issue of material fact is said to be genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255; *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 n.2 (1986). The court must "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FRCP 56(e)).

### III.   DISCUSSION

"Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action' even if that judgment 'may have been wrong or rested on a legal principle subsequently overruled in another case.'" *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). Res judicata is an affirmative defense and the party asserting it must plead and prove the defense; "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell,* 553 U.S. 880, 892, 907 (2008). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate," res judicata "protect[s] against the expense and vexation attending multiple lawsuits,

4 – FINDINGS AND RECOMMENDATION

conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (internal quotations omitted).

Res judicata applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Regl. Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citing *Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 2968 F.3d 1137, 1143 n.3 (9th Cir. 2002)). Simply put, res judicata prohibits successive litigation of the very same claim by the same parties. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016), *as revised* (June 27, 2016) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

An identity of claims exists when (1) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) substantially the same evidence is presented in the two actions; (3) the two suits involve infringement of the same right; and (4) the two suits arise out of the same transactional nucleus of facts. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). "The last criteria 'is the most important.'" *Wilder v. Bank of Am., N.A.*, 2014 WL 12591934, at *10 (C.D.Cal., 2014) (citing *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980)).

"Res judicata does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Whole Woman's Health*, 136 S. Ct. at 2305 (citing *Morgan v. Covington Tp.*, 648 F.3d 172, 178 (3d Cir. 2011), *as amended* (Aug. 11, 2011)). "Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." RESTATEMENT (SECOND) OF JUDGMENTS § 24, cmt. f (1982). "Ignorance of a party does not, however, avoid the bar of res

5 – FINDINGS AND RECOMMENDATION

judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871–72 (9th Cir. 1992) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 26 comment j) (applying res judicata even though plaintiff was unaware of certain claims when filing the initial complaint); *id.* at 868 ("Res judicata bars both claims actually litigated and those that arise from the same transaction and could have been litigated in a prior proceeding."); *id.* at 871 ("Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.").

### A.  Res judicata bars Murphy's defamation claims.

The second and third elements of res judicata are clearly met. First, *Murphy I* was a final judgment on the merits. *See* FRCP 41(b) ("[u]nless the dismissal order states otherwise," an involuntary dismissal "operates as an adjudication on the merits"); *United States v. Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997). Second, the parties are in privity because they are the same parties as in *Murphy I*. The only element at issue is the first one—whether there is an identity of claims. Because all four elements of that test are met, there is an identity of claims between *Murphy I* and *Murphy II*.

#### 1. The rights and interests established in *Murphy I* would be destroyed.

First, the rights and interests established in *Murphy I* would be destroyed by this action if it were allowed to proceed. Clearly, defendant's "freedom from liability" established by the dismissal of the defamation claims in *Murphy I* would be impaired if this instant action were allowed to proceed. *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

## 2. Substantially the same evidence is presented in the two actions.

Second, substantially the same evidence is presented in this action as was presented in *Murphy I*. Indeed, exactly the same evidence could have been presented if Murphy prosecuted *Murphy I* and sought discovery.

*Murphy I* resulted in adjudication on the merits of Murphy's claims that Mosebach defamed him with numerous statements to "many individuals" and to "a lot of people," including people on base, the general public and the media—statements she made because it helped her deal with the unauthorized and unchaperoned November 2011 medical examination. *Murphy I*, 3:15-cv-00402-MO, ECF #1, Ex. 1, at 1–2. It is hard to understand how these claims from his initial action are different than his claims in this action that Mosebach made statements to "at least fifty people" to "make herself feel better." Murphy's Supp. Response, ECF #36, at 3. However, while Murphy concedes that the "initial defamatory statements which were the subject of the first lawsuit are precluded and cannot be litigated," he claims there are "later defamatory statements of which he was not aware at the time of the prior lawsuit." Murphy's Supp. Sur-Response, ECF #40, at 1.

Specifically, Murphy claims he did not learn the full extent of Mosebach's defamatory statements until he obtained an entire copy of the Letter of Reprimand in October of 2015, after *Murphy I* was dismissed. Murphy Decl., ECF #41 ¶¶ 1–7; *Murphy II*, ECF #1, Ex. 2, at 35–37 ("Letter of Reprimand"). Murphy contends that, while Mosebach's May 2015 testimony provided "some notice of the scope" of her defamatory statements, it was not until he had a full copy of her Letter of Reprimand that he learned the categories of individuals who had heard the statements. *Murphy II*, ECF #40, at 3.

Murphy's argument is unpersuasive. Importantly, Mosebach testified on May 7, 2015, at Murphy's administrative discharge hearing, which presumably he attended. ECF #38, Ex. B. This occurred while *Murphy I* was still pending and even before Murphy's response to the court's order to show cause was filed on May 11, 2015. ECF #38, Ex. B; *Murphy I*, ECF #11. Murphy easily could have discovered the full letter during *Murphy I*, but instead allowed the case to be dismissed by failing to submit a response to the defendant's motion to dismiss for lack of jurisdiction and then failing to adequately respond to the court's order to show cause.

Murphy cites to newly discovered statements that Mosebach made to a Senior Non-Commissioned Officer ("NCO") in the Operations Group and statements made to a Comptroller Flight Member. Murphy's Supp. Sur-Response, ECF #40, at 3. However, Mosebach made these statements well before *Murphy I* was filed on February 5, 2015. *Murphy II*, ECF #1, Ex. G. She made the statements to the Senior NCO on January 22, 2014, and the statements to the Comptroller Flight Member on January 13, 2013. *Id.* Again, Murphy easily could have discovered these statements during *Murphy I*, and he has no one to blame for his failure to do so but himself.

Finally, Murphy contends that the letter was purposefully withheld from him. Ignorance can overcome res judicata if it was caused by the opposing party's misrepresentation or concealment. *See Wester Sys.*, Inc., 958 F.2d at 871–72 (holding that a party's ignorance does not avoid the bar of res judicata unless the ignorance was caused by the opposing party's misrepresentation or concealment). But here, Murphy asserts Captain Carlisle, the JAG officer assigned to represent him in the Medical Board proceeding, conspired to withhold the contents of Mosebach's Letter of Reprimand from him. Murphy's Suppl. Sur-Response, ECF #40, at 4. Captain Carlisle is not the opposing party in this lawsuit. Thus, this exception does not apply.

8 – FINDINGS AND RECOMMENDATION

### 3. The two suits involve infringement of the same right.

Third, *Murphy I* and *Murphy II* involve infringement of the same right: Murphy's right to be free of false and defamatory attacks. *See* 50 Am. Jur. 2d Libel and Slander § 2 ("The law of defamation embodies the public policy that individuals should be free to enjoy their reputations unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right."). Murphy is correct that each defamatory statement is its own claim. However, as explained above, this action does not allege any new defamatory statements were made that could not have been brought in *Murphy I*, if Murphy had taken appropriate steps to discover them.

### 4. The two suits arise out of the same transactional nucleus of facts.

Fourth, and most importantly, *Murphy I* and *Murphy II* arise out of the same transactional nucleus of facts: the unauthorized November 2011 medical examination of Mosebach, her numerous subsequent statements regarding Murphy's involvement in the examination, and the fact that Mosebach's statements led to a Letter of Reprimand. As discussed in Section A.2, *supra*, this action does not allege any new defamatory statements that could not have been discovered in *Murphy I*.

In conclusion, because the rights and interests established in *Murphy I* would be destroyed or impaired by prosecution of the second action, substantially the same evidence is presented in the two actions, the two suits involve infringement of the same right, and the two suits arise out of the same transactional nucleus of facts, there is an identity of claims between *Murphy I* and *Murphy II*. Because there is an identity of claims, a final judgment on the merits, and privity between parties, res judicata bars this action.

### B. Statute-of-limitations discovery rule is not an exception to res judicata.

Murphy creatively argues that his defamation claim is saved by the discovery rule because he did not have notice of all of the defamatory statements. *See* Murphy's Suppl. Response, ECF #36, at 2; Murphy's Suppl. Sur-Response, ECF #40, at 1. Murphy cites *Holdner v. Oregon Trout*, 173 Or.App. 344, 22 P.3d 244 (2001), for that notion that the discovery rule applies to defamation claims. Murphy's Suppl. Response, ECF #36, at 2. This is true, but it is also irrelevant. The question is not whether the statute of limitations has accrued, which is what the discovery-rule inquiry answers. The question is whether there is an identity of claims between *Murphy I* and *Murphy II*.

Whether Murphy appreciates this distinction or not, he argues res judicata should not apply because he had not discovered the additional statements revealed in the Letter of Reprimand. Murphy's Suppl. Sur-Response, ECF #40, 1–5. Because Murphy provides no authority supporting the argument that the discovery rule somehow supplants the identity-of-claims analysis, this argument fails.

Even if the issue were whether the statute of limitations had run, Murphy's argument would still fail. He knew or should have known about the additional defamatory statements purportedly revealed in the Letter of Reprimand because a reasonable person would have inquired about the contents of the letter once that person knew it existed.

"In general terms, the discovery rule provides that a claim does not accrue until it has been discovered or, in the exercise of reasonable care, should have been discovered." *Holdner*, 173 Or.App., at 351, 22 P.3d at 247 (quoting *FDIC v. Smith*, 328 Or. 420, 428, 980 P.2d 141 (1999) (internal quotation omitted)). A claim is discovered when the plaintiff has a reasonable opportunity to become aware of the (1) harm; (2) causation; and (3) tortious conduct. *Holdner,*

10 – FINDINGS AND RECOMMENDATION

173 Or.App. at 349, 22 P.3d at 247 (citing *Gaston v. Parsons*, 318 Or. 247, 255, 864 P.2d 1319, 1324. "Actual knowledge that each element is present is not required." *Gaston*, 318 Or. at 255, 864 P.2d at 1324.

> [T]he statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists. . . . Relevant to this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so. The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.

*Gaston,* 318 Or. at 256, 864 P.2d at 1324.

If Murphy had exercised reasonable care, he would have requested the production of the Letter or Reprimand during the pendency of *Murphy I*.

## IV. RECOMMENDATION

For the above reasons, the United States' motion to dismiss (ECF #15) should be GRANTED.

## V. SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, April 13, 2017. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///

///

///

11 – FINDINGS AND RECOMMENDATION

## VI. <u>NOTICE</u>

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED March 30, 2017.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge